# TOWN OF NEW HARTFORD ET AL. *v.* CONNECTICUT RESOURCES RECOVERY AUTHORITY ET AL.
## (SC 18110)

Rogers, C. J., and DiPentima, McLachlan, Gruendel and Robinson, Js.*

Argued October 16, 2008—officially released May 19, 2009

* The listing of justices reflects their status on this court as of the date of oral argument.

*Louis R. Pepe*, with whom were *Richard F. Wareing, Richard H. Goldstein, Daniel J. Klau, Joseph J. Chambers* and, on the brief, *David W. Case*, for the appellant (named defendant).

*David S. Golub*, with whom were *Jonathan M. Levine, Joseph V. Meaney, Jr.*, and, on the brief, *Marilyn J. Ramos* and *Craig N. Yankwitt*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, J. The dispositive issue in this appeal is whether the named defendant, Connecticut Resources Recovery Authority,[1] has standing to challenge the amount of the attorney's fees awarded to the counsel for the plaintiffs, a certified class of seventy municipalities.[2] The plaintiffs commenced an action following the defendant's ill-fated loan of $220 million to Enron Power Marketing, Inc., a subsidiary of Enron Corporation (collectively Enron). The court rendered judgment in favor of the plaintiffs on its breach of contract and unjust enrichment claims, awarding a constructive trust in the amount of $35,873,732.[3] From that sum, the plaintiffs'

[1] The underlying action included claims against additional defendants, all of which were withdrawn or dismissed prior to trial. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 436 n.1,     A.2d     (2009). We refer to the Connecticut Resources Recovery Authority alone as the defendant.

[2] The trial court certified the case as a class action on behalf of the named plaintiff, the town of New Hartford, and sixty-nine similarly situated municipalities, including the cities of Hartford and Waterbury and the towns of West Hartford and Barkhamsted. We refer to the class members collectively as the plaintiffs and individually by name where necessary.

[3] This appeal arises out of the same litigation as *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 970 A.2d 592 (2009), *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 489, 970 A.2d 570 (2009) and *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 970 A.2d 578 (2009), which were released on the same date as this opinion. For a complete description of the underlying litigation and parties, see *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 433.

counsel filed a motion for attorney's fees of approximately $8.9 million, or 23.5 percent of the total amount obtained in the litigation related to Enron, as well as expenses of approximately $174,000. The defendant filed an objection, arguing that the fees sought were unreasonable. The court determined that the defendant lacked standing to challenge the award and granted the motion for attorney's fees and expenses in the amount requested. We conclude that the court properly determined that the defendant was not aggrieved and therefore lacked standing to challenge this award. Accordingly, we affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following facts, which generally are not disputed by the parties. The action began in December, 2003, and was certified as a class action on March 21, 2006. On June 19, 2007, the court issued a memorandum of decision rendering judgment in favor of the plaintiffs. Specifically, it enjoined the defendant from imposing costs related to the Enron transaction on the plaintiffs and established a constructive trust in the amount of $35,873,732 over settlement proceeds that the defendant had recovered in litigation stemming from the Enron transaction to provide restitution to the plaintiffs.

On November 16, 2007, the plaintiffs filed a motion for order of distribution of the funds in the constructive trust and the award of attorney's fees and expenses. Three days later, with the agreement of the parties, the court ordered counsel to provide the plaintiffs with notice that a hearing on the motion would be held on November 30, 2007. This notice apprised the plaintiffs of the orders being sought at the hearing, including the proposed plan of allocation. The notice further advised each plaintiff of its right to opt out of the class, to reject the benefits of the June 19, 2007 decision, and to object or otherwise be heard. Notice was sent by electronic

and regular mail to the plaintiffs on or before November 21, 2007.

The November 16, 2007 motion requested an award of attorney's fees based on "the common-fund percentage of recovery methodology, in the amount of $8,982,602, equal to approximately 23.5 [percent] of the total monetary benefit obtained for the [plaintiffs] to date in this litigation."[4] The motion also sought reimbursement for litigation expenses in the amount of $174,427.02. Attached to the motion was an affidavit from Attorney David S. Golub, lead counsel for the plaintiffs, and a memorandum of law.

The defendant filed an objection on November 30, 2007, the date of the hearing on the motion for distribution of the funds in the constructive trust and award of attorney's fees.[5] The defendant's motion argued that the attorney's fees requested by the plaintiffs' counsel were not reasonable. At the hearing, representatives from the plaintiffs Hartford, West Hartford and Waterbury, the largest municipalities in the class, spoke in favor of both the motion for distribution and the motion for attorney's fees. The court observed that none of the plaintiffs elected to "opt out" from participating in the distribution or filed an objection to the distribution or the attorney's fees. The defendant voiced its objection to both the proposed distribution and the award of attorney's fees.

---

[4] Initially, counsel agreed to represent the towns of New Hartford and Barkhamsted on a contingent basis, with the fee to equal 33.33 percent of any recovery. Counsel further agreed to advance all costs necessary for the prosecution of the action and that any reimbursement would come only from the moneys recovered. After the case was certified as a class action, an advisory committee for the plaintiffs obtained a reduced contingency fee agreement of 22.5 percent of the overall recovery, and the committee subsequently increased this percentage to 23.5.

[5] The defendant's counsel sent this objection electronically to the plaintiffs' counsel at 8 p.m. on November 29, 2007.

On December 7, 2007, the court issued its memorandum of decision, approving the proposed method of distribution and awarding attorney's fees. The court determined that the defendant lacked standing to object to the award of attorney's fees. Guided by the United States Court of Appeals for the Second Circuit; see *Goldberger* v. *Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); the trial court conducted a comprehensive analysis to determine whether the attorney's fees in the present case were reasonable.[6] It concluded that the fees were reasonable, and granted the motion for the award of attorney's fees and reimbursement of expenses.

On December 10, 2007, the defendant filed in this court a motion for a temporary stay of the order authorizing the distribution of the funds to the plaintiffs and the plaintiffs' counsel, and a motion for review of the order of distribution and attorney's fees. The plaintiffs filed a consolidated objection on December 12, 2007. On December 17, 2007, this court granted the defendant's motion, awarding the relief sought in part. Specifically, we stayed the disbursement of the attorney's fees and reimbursement of all expenses until further order. Additionally, we ordered the trial court to articulate the basis

---

[6] Specifically, the court compared the percentage award of attorney's fees in the present case to other recent class actions. It then examined the six factors set forth by the United States Court of Appeals for the Second Circuit to determine the reasonableness of the fee in a common fund class action: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the result; and (6) public policy concerns. See *Goldberger* v. *Integrated Resources, Inc.*, supra, 209 F.3d 50. It specifically found that the plaintiffs' counsel did not receive a windfall. The court also conducted a "cross-check" of the percentage award with a lodestar calculation, under which the court determines the number of hours reasonably billed to the class and multiplies that number by an appropriate hourly rate; see id., 47; in support of its finding of reasonableness. Finally, the court noted the lack of objection by the plaintiffs to the proposed percentage award.

for denying the stay as to the portion of the judgment representing attorney's fees and accrued interest thereon together with costs. We further ordered that the balance of the common fund be distributed in accordance with the trial court's December 7, 2007 memorandum of decision.

The trial court issued its articulation on December 18, 2007, stating: "Pursuant to Practice Book § 61-11 (c), the trial court is of the opinion that both (1) the appeal is taken only for delay, and (2) the due administration of justice requires that the stay be terminated." The court further observed that the plaintiffs did not object to the award of attorney's fees. On December 21, 2007, the defendant filed the present appeal.[7] On January 11, 2008, we granted the defendant's motion for review and granted the relief sought as to the issue of attorney's fees. Specifically, we stayed the disbursement of attorney's fees and reimbursement of all expenses out of the common fund.

On appeal, the defendant argues that the court improperly awarded attorney's fees despite the fact that there is zero actual economic benefit to the plaintiffs. Second, the defendant claims that the court improperly "rewarded [the counsel for the plaintiffs] for their perverse, yet strategic, decision to *prevent* [the defendant] from executing a . . . plan [approved by its board of directors] to rebate $14.8 million directly to the plaintiffs and to use an additional $9 million to pay down [the defendant's] debt, which also would have benefited the plaintiffs." (Emphasis in original.) The plaintiffs respond first that the defendant lacked standing to challenge the award of attorney's fees on the ground that the award "did not affect the amount of [the defendant's]

---

[7] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

liability or change in any way the amount of restitution [the defendant] was ordered to provide." The plaintiffs further contend that the court's award of attorney's fees did not constitute an abuse of discretion.

A brief discussion regarding the percentage award in common fund class action cases will facilitate our analysis. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. See *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Fleischmann Distilling Corporation* v. *Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967). This rule is generally followed throughout the country. See 20 Am. Jur. 2d, Costs § 72 [1965]. Connecticut adheres to the American rule." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 72–73, 689 A.2d 1097 (1997).

Common fund fee awards, however, present a recognized exception to the American rule.[8] See *Boeing Co.* v. *Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); see also Federal Judicial Center, Manual for Complex Litigation (Fourth), § 14.121 (2004); 1 A. Conte, Attorney Fee Awards (3d Ed. 1993) § 1:3, p. 8; 4 A. Conte & H. Newberg, Newberg on Class Actions (4th Ed. 2002) § 14:1, p. 505. Under the common fund fee doctrine, attorneys whose efforts create the fund are entitled to a reasonable fee to be taken from the fund. *Goldberger* v. *Integrated Resources, Inc.*, supra, 209 F.3d 47. The doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without

---

[8] It has been stated that because the application of the common fund doctrine spreads the fees among the prevailing party rather than shifting them to the losing party, the common fund doctrine is entirely consistent with the American rule. 4 A. Conte & H. Newberg, Newberg on Class Actions (4th Ed. 2002) § 13:76, p. 489.

contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co.* v. *Van Gemert,* supra 478; see also *Goldberger* v. *Integrated Resources, Inc.,* supra, 47. With this background in mind, we now turn to the specifics of the present appeal.

We first address the issue raised by the plaintiffs that the defendant is not aggrieved, and therefore lacks standing to challenge the award of attorney's fees. The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. *West Farms Mall, LLC* v. *West Hartford,* 279 Conn. 1, 11 n.6, 901 A.2d 649 (2006); see also *In re Christina M.,* 280 Conn. 474, 480, 908 A.2d 1073 (2006) (addressing standing issue before considering merits of issues raised on appeal). Claims that implicate a court's subject matter jurisdiction present a question of law that we review under the plenary standard. *In re Allison G.,* 276 Conn. 146, 156, 883 A.2d 1226 (2005); see also *PNC Bank, N.A.* v. *Kelepecz,* 289 Conn. 692, 704–705, 960 A.2d 563 (2008).

We begin with some well settled principles regarding standing and its aggrievement component. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent. . . . Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts

and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002).

"Two broad yet distinct categories of aggrievement exist, classical and statutory." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 64, 946 A.2d 862 (2008).[9] We have stated that "[t]he fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *State* v. *Ross*, 272 Conn. 577, 597, 863 A.2d 654 (2005); *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984); see also *State* v. *T.D.*, 286 Conn. 353, 358, 944 A.2d 288 (2008) ("[t]o be aggrieved, a party must have a specific personal and legal interest in the subject matter of the litigation and, further, that interest must be specially and injuriously affected by the decision at issue").

The plaintiffs argue that because the attorney's fees are taken entirely from the constructive trust, the amount of fees paid to the plaintiffs' counsel does not affect the defendant's liability. As a result, the defendant was not aggrieved by the decision to award the plain-

[9] There is no claim of statutory aggrievement in the present case.

tiffs' counsel approximately $8.9 million. We agree with the plaintiff.

We note that we have not found, nor has either party provided, any Connecticut precedent directly addressing this issue. Thus, we turn to case law from outside our jurisdiction to see how other courts have resolved the issue of whether a defendant has standing to challenge the award of attorney's fees from a common fund. In *Boeing Co.* v. *Van Gemert*, supra, 444 U.S. 481 n.7, the United States Supreme Court observed that the underlying "judgment on the merits stripped [the defendant] of any present interest in the fund" and that it "had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class." Similarly, in *Copeland* v. *Marshall*, 641 F.2d 880, 905 n.57 (D.C. Cir. 1980), the United States Court of Appeals for the District of Columbia Circuit stated: "In common fund cases, the losing party no longer continues to have an interest in the fund; the contest becomes one between the successful plaintiffs and their attorneys over division of the bounty." (Internal quotation marks omitted.)

Sister states have concluded that a defendant lacks standing to challenge the award of attorney's fees from common funds in class actions. In *Board of Trustees* v. *Rosewell*, 262 Ill. App. 3d 938, 954, 635 N.E.2d 413 (1992), leave to appeal denied, 149 Ill. 2d 647, 612 N.E.2d 511 (1993), the Illinois Appellate Court dismissed the defendants' cross appeal challenging the award of attorney's fees for lack of standing. Specifically, the court noted that the "defendants have suffered no injury nor will they benefit from a reversal of the judgment because the fees came from a fund established from money already awarded to the plaintiff class. . . . *In cases such as this one, where a lump sum in a class action suit has been paid to the class and attorney*

*fees are awarded from that fund, the defendant does
not have standing to contest the award of fees . . . ."*
(Citation omitted; emphasis added.) Id.; see also *Samp-
son* v. *Eastman Kodak Co.*, 195 Ill. App. 3d 715, 721–22,
552 N.E.2d 1194 (1990) (same).

The Supreme Court of California reached the same
conclusion in *Sanders* v. *Los Angeles*, 3 Cal. 3d 252,
475 P.2d 201, 90 Cal. Rptr. 169 (1970). In that case, the
court held that the defendant was not an aggrieved
party, and therefore lacked standing to challenge the
award of attorney's fees to class counsel. Id., 263. The
court reasoned: "The liability of [the] defendant was
not increased in any way by reason of this award. . . .
The only parties injuriously affected by the order for
fees are members of the class in whose behalf the action
was brought and out of whose recoveries the fees will
be paid. They did not appear in objection to the award,
did not move to vacate the award, and did not appeal."
(Internal quotation marks omitted.) Id.; see also *Gen-
eral Motors Corp.* v. *Bloyed*, 916 S.W.2d 949, 961 (Tex.
1996); 1 A. Conte, supra, § 2:27, p. 228; 4 A. Conte & H.
Newberg, supra, § 13:83, p. 500.

The defendant directs our attention to *Zucker* v. *Occi-
dential Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th
Cir. 1999), cert. denied, 529 U.S. 1066, 120 S. Ct. 1671,
146 L. Ed. 2d 481 (2000), and argues that it supports
the claim that we may review the trial court's ruling on
attorney's fees. We are not persuaded by the defendant's
reliance on *Zucker*. First, in *Zucker*, a member of the
class filed an objection to both the merits of the settle-
ment and the amount of attorney's fees. Id., 1325. In
contrast, none of the plaintiffs in the present case filed
such an objection and several plaintiffs spoke in favor
of both the settlement and the award of attorney's fees.
Second, the class in *Zucker* "did not get a dime in
cash" and instead the attorney's fees were paid by the
defendant "based on negotiations between the defen-

dant and the attorneys for the plaintiff class." Id., 1326. Here, the attorney's fees were paid from the constructive trust pursuant to an agreement between the plaintiffs and their counsel. The Ninth Circuit Court of Appeals expressed concern about potentially collusive arrangements between the defendants in a class action and counsel for the plaintiff class whereby the attorneys could induce the class members to settle for too little benefit. Id., 1327. Such a situation does not apply in the present case, given the arrangement between the plaintiffs and their attorneys. Finally, we note the unique procedural posture of *Zucker*, which involved the settlement of a class action, and a remand to the District Court with express instructions to reconsider the issue of attorney's fees. Id., 1325. The remand order required the District Court to reconsider the amount of attorney's fees and to articulate its reasoning. Id., 1328. Accordingly, in the appeal following the remand, the court did not decide the issue of standing. Id., 1328–29.

After examining closely the decision in *Zucker*, we disagree with the defendant that the holding supports the assertion that it has standing to contest the fees awarded to the plaintiffs' counsel in the present matter.[10] Instead, we agree with the plaintiffs and the authority directly addressing the issue that standing to object to an award of attorney's fees from a common fund is limited to those who have helped create the common fund and to those who will benefit from it, namely, the members of the class. Such a rule comports with the prudent principle from the United States Supreme Court that "[a] request for attorney's fees

---

[10] "When multiple law firms participated jointly in recovering a common fund for the benefit of the class, the court will reach an overall reasonable fee award for all counsel based on a fair percentage of the fund and, in the absence of an allocation agreement among counsel, will allocate that overall award among participating counsel based on reasonable efforts and relative responsibilities they exercised leading to the creation of the common fund for the benefit of the class." 4 A. Conte & H. Newberg, supra, § 14:9, p. 604.

should not result in a second major litigation." *Hensley* v. *Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); see also *Buckhannon Board & Care Home, Inc.* v. *Dept. of Health & Human Resources*, 532 U.S. 598, 609, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); *Pierce* v. *Underwood*, 487 U.S. 552, 563, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988).

In the present case, the court conducted a thorough and complete review of the request for attorney's fees. It noted that the plaintiffs' advisory committee had approved an increase in the percentage to be paid from 22.5 percent to 23.5 percent, and observed that none of the plaintiffs had objected after receiving notice of the proposed settlement and the award of attorney's fees. Additionally, the three plaintiffs with the largest stake in the distribution, Hartford, Waterbury and West Hartford, all supported the application for attorney's fees. Simply put, there was no objection to the award of attorney's fees from those who had to pay for it.

The defendant argues that the circumstances of this case, which it characterizes as "a dispute between political subdivisions for the state," should favor the inclusion of the defendant in the debate concerning the amount of the attorney's fees awarded to the plaintiffs' counsel.[11] It maintains that but for its objection, the trial court "would not have had the benefit of anyone asking probing questions . . . ." We emphasize that the seventy plaintiffs had the opportunity to raise objections and present claims of unreasonable attorney's fees to the trial court.

---

[11] In its reply brief, the defendant also argued that a controversy involving public entities and public money made it "unacceptable" that it not be able to present argument on the issue of attorney's fees. The defendant, however, has failed to cite any authority for the notion that the resolution of the issue of standing should turn on whether a case involves public versus private entities and money.

The plaintiffs constituted the group whose interest was affected directly by the award of attorney's fees. An advisory committee acted to protect the interests of the plaintiffs, and many of the members had the benefit of corporation counsel. The plaintiffs, whose ultimate recovery is directly reduced by approximately 23.5 percent, unanimously chose to accept the award of attorney's fees and did not raise a single objection. Furthermore, representatives of some of the plaintiffs spoke in favor of the award of attorney's fees. In short, the group with the greatest interest in preventing an unreasonable award of attorney's fees appears to have been completely satisfied that the amount sought in the present case was evenhanded and equitable. Given this background, we fail to see why the court should have been required to consider the objections of a party whose interest was not affected at all by the decision to award attorney's fees.[12]

Our conclusion in this case rests on the fact that the amount of the fees awarded to the plaintiffs' counsel had no impact on the amount paid by the defendant to the constructive trust so that the defendant had no additional liability as a result of the award. The plaintiffs accepted and supported the proposed attorney's fees, and the trial court rigorously reviewed the fees application, and found the award to be reasonable. The trial court properly concluded that the defendant was not aggrieved and, therefore, lacked standing to challenge the attorney's fees awarded to the plaintiffs' counsel.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[12] Were we to reach a contrary conclusion with respect to the issue of standing, we could inadvertently supply a nonprevailing party with a particularly pointed arrow in its quiver to be used as a weapon of last resort. Specifically, following heated and protracted litigation, the nonprevailing party might engineer a last ditch effort to burden the prevailing counsel with an extended battle over the issue of attorney's fees. As a matter of policy, we decline to provide such an opportunity.