******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANASTASIA SCHIMANSKI
## (AC 41802)

Elgo, Bright and Moll, Js.*

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crime of operating a motor vehicle with a suspended license, the defendant appealed to this court, challenging the trial court's denial of her motion to dismiss counts in the state's first substitute information. The defendant was arrested and charged with operating a motor vehicle while under the influence of alcohol, and her license was suspended for forty-five days pursuant to statute (§ 14-227b (i)) as a result of her refusal to take a chemical alcohol test. The defendant was subsequently ordered not to operate a vehicle that was not equipped with an ignition interlock device. Forty-seven days after the suspension began, the defendant operated a vehicle that did not have an ignition interlock device installed in it and allegedly struck another motor vehicle. Thereafter, she was charged with, inter alia, operating a motor vehicle while her license was under suspension in violation of the applicable statute (§ 14-215 (c) (1)) and operating a motor vehicle not equipped with an ignition interlock device in violation of the applicable statute (§ 14-227k (a) (2)). The defendant moved for a dismissal of these charges against her, claiming that the forty-five day suspension of her license had expired and that she had not yet been obligated to operate a motor vehicle with an ignition interlock device installed. The trial court denied the motion to dismiss. The state subsequently filed a second substitute information charging the defendant solely with operating a motor vehicle while her license was under suspension. From the judgment of conviction, the defendant appealed to this court. *Held*:

1. The trial court properly denied the defendant's motion to dismiss the count of the state's first substitute information charging her with operating a motor vehicle while her license was under suspension: the text of § 14-215 (c) (1) penalizes a person who operates a motor vehicle while, inter alia, her license is under suspension pursuant to § 14-227b, and the text of § 14-227b (i) (1) mandates the installation of an ignition interlock device in any motor vehicle operated by that individual before the restoration of her license, thus, the defendant's license remained suspended following the forty-five day statutory period until she installed an ignition interlock device, the defendant's reliance on case law that predated amendments to § 14-227b was unavailing, and this court declined to apply the rule of lenity where the statutory text concerning the lack of restoration on the forty-five day period of suspension is not ambiguous; moreover, the defendant lacked standing to bring an equal protection claim because she was not aggrieved: although the defendant claimed that requiring the installation of an ignition interlock device before a license suspension can be lifted imposes undue burdens on indigent individuals who cannot afford the fees associated with the installation of such a device, the defendant paid the fees to install an ignition interlock device and to restore her license, she did not identify any specific personal and legal interest that had been specially and injuriously affected, and there was no basis on the record to find that the defendant was reasonably likely to incur future criminal liability relating to the ignition interlock device requirement.

2. The defendant's appeal was dismissed with respect to her claim challenging the trial court's denial of her motion to dismiss the charge against her of operating a motor vehicle not equipped with an ignition interlock device from the state's first substitute information: the defendant's claim was moot as a result of the state's decision not to charge the defendant with a violation of § 14-227k (a) (2) in its second substitute information; moreover, the defendant's claim that the state could not recharge her with a violation of § 14-227k (a) (2) was not justiciable because it was not ripe, as it might never transpire.

Argued June 19—officially released November 3, 2020

Substitute information charging the defendant with the crimes of operating a motor vehicle with a suspended license, avoidance of an interlock ignition device and evading responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the court, *Spader, J.*, denied the defendant's motion to dismiss the charges of operating a motor vehicle with a suspended license and avoidance of an interlock ignition device; thereafter, the state filed a second substitute information charging the defendant with the crime of operating a motor vehicle with a suspended license; subsequently, the defendant was presented to the court on a conditional plea of nolo contendere to the charge of operating a motor vehicle with a suspended license; judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Appeal dismissed in part; affirmed.*

*Aaron J. Levin*, certified legal intern, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Anastasia Schimanski, appeals from the judgment of conviction rendered by the trial court following her conditional plea of nolo contendere to operating a motor vehicle while her license was suspended in violation of General Statutes § 14-215 (c) (1). On appeal, the defendant claims that the court erred in denying her motion to dismiss directed to (1) count one of the state's first substitute information charging her with a violation of § 14-215 (c) (1), and (2) count two of the state's first substitute information charging her with operating a motor vehicle not equipped with a functioning ignition interlock device (IID) in violation of General Statutes § 14-227k (a) (2). We conclude that (1) the court properly denied the defendant's motion to dismiss as to count one of the state's first substitute information, and (2) the defendant's claims directed to the denial of her motion to dismiss as to the second count of the first substitute information are either moot or not ripe. Accordingly, we dismiss the appeal as to the denial of the motion to dismiss the second count of the first substitute information for lack of subject matter jurisdiction, and we affirm the judgment of conviction.

The following procedural history and facts, as undisputed or made a part of the record at the time the defendant entered her plea, are relevant to our resolution of the defendant's claims. On September 18, 2017, the defendant was arrested and charged with operating a motor vehicle while under the influence in violation of General Statutes § 14-227a. Pursuant to General Statutes § 14-227b (i), the Department of Motor Vehicles (department) suspended the defendant's license for a period of forty-five days, beginning on October 18, 2017, and ending on December 2, 2017, as a result of the defendant's refusal to take a chemical alcohol test. On December 4, 2017, the trial court, *Spader*, *J.*, granted the defendant's application for the pretrial alcohol education program. See General Statutes § 54-56g. In connection with doing so, the court engaged in the following colloquy with the defendant:

"The Court: One of the key things about the alcohol education program is if you violate the [department's] interlock device program, that's a violation of the alcohol education program. So just—don't be operating a motor vehicle unless you have the interlock device attached to it.

"[The Defendant]: Yes. Sir—I'm sorry—I don't own a vehicle.

"The Court: No—yeah, well, the thing is, don't borrow a vehicle either that doesn't have an interlock device on it—you know—if there's—once your license is restored, once your privileges are restored, okay?

"[The Defendant]: Yes. sir."

That same day, shortly after leaving the courthouse following the hearing, the defendant operated a motor vehicle, which did not have an IID installed in it, and allegedly struck another motor vehicle. As a result of that incident, the defendant was issued a misdemeanor summons and complaint, giving rise to the present case, charging her with operating a motor vehicle while her license was under suspension in violation of § 14-215, evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b), and following another motor vehicle too closely in violation of General Statutes § 14-240. On February 23, 2018, the state filed its first substitute information. In count one, the state charged the defendant with operating a motor vehicle while her license was under suspension in violation of § 14-215 (c) (1). In count two, the state charged the defendant with operating a motor vehicle not equipped with an IID in violation of § 14-227k (a) (2). In count three, the state charged the defendant with evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (b) (3).

On March 5, 2018, the defendant filed a motion to dismiss counts one and two of the first substitute information. With respect to count one, the defendant argued that she could not properly be charged with having committed a violation of § 14-215 (c) (1) on December 4, 2017, because at such time, her license was not under suspension on account of § 14-227b (i) (1). According to the defendant, the forty-five day suspension of her license pursuant to § 14-227b (i) (1) had expired on December 2, 2017. With respect to count two, the defendant argued that she was not obligated on December 4, 2017, either by direction of the department or by order of the trial court, to operate a motor vehicle with an IID installed, and, thus, she could not properly be charged with having violated § 14-227k (a) (2) on that date.[1]

On March 19, 2018, after having heard argument on March 9, 2018, the trial court issued a memorandum of decision denying the defendant's motion to dismiss in its entirety. As to count one charging the defendant with a violation of § 14-215 (c) (1), the court determined that, pursuant to §§ 14-227a and 14-227b, the installation of an IID is a "mandatory statutory requirement implemented by the state legislature that must be fulfilled to 'unsuspend' a suspended license." The court further determined that the defendant did not have an IID installed on December 4, 2017, and that the department did not lift her suspension and restore her privilege to operate a motor vehicle until January 2, 2018, by which time the defendant had installed an IID. In addition, the court addressed and rejected the merits of a claim raised by the defendant during oral argument that requiring the installation of an IID in order to lift the suspension of a person's license would violate the equal

protection clause of the United States constitution by imposing undue burdens on indigent individuals. In light of the foregoing, with respect to count one, the court concluded that the state could prosecute the defendant for a violation of § 14-215 (c) (1). With respect to count two, the court determined that during the hearing held on December 4, 2017, it unequivocally and directly had ordered the defendant not to operate any motor vehicle without an IID installed. Thus, the court concluded, the state could prosecute the defendant for a violation of § 14-227k (a) (2).

On May 9, 2018, the state filed a second substitute information charging the defendant solely with operating a motor vehicle while her license was under suspension in violation of § 14-215 (c) (1). On May 25, 2018, pursuant to General Statutes § 54-94a, the defendant entered a plea of nolo contendere to that charge, conditioned on her right to take an appeal from her conviction on the basis of the court's denial of her motion to dismiss. After a canvass, the court accepted the conditional plea, entered a finding of guilty, and sentenced the defendant to a term of one year of incarceration, execution suspended, with one year of probation.[2] This appeal followed.[3] Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the trial court erred in denying her motion to dismiss count one of the state's first substitute information charging her with operating a motor vehicle while her license was under suspension in violation of § 14-215 (c) (1). Specifically, the defendant contends that, as a matter of statutory interpretation, her failure to have installed an IID did not extend the suspension of her license under § 14-227b (i) (1) beyond the forty-five day period, which expired on December 2, 2017, and, as a result, she could not have been charged with having committed a violation of § 14-215 (c) (1) on December 4, 2017. Additionally, the defendant contends that interpreting the statutory requirements in §§ 14-215 (c), 14-227a, and 14-227b to mandate the installation of an IID as a condition to lift the suspension of a person's license violates the equal protection clause of the United States constitution. These contentions, which we address in turn, are unavailing.

A

The defendant first contends that the trial court should have dismissed the charge under § 14-215 (c) (1) because, pursuant to §§ 14-215 (c) (1), 14-227a, and 14-227b, the suspension of her license expired on December 2, 2017, and was not extended to December 4, 2017, as a result of her failure to install an IID. We disagree.

At the outset, we set forth the standard of review and legal principles that apply to the defendant's claim.

"Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant . . . review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." (Internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 12, 160 A.3d 1034 (2017).

Resolving the defendant's claim requires us to interpret various provisions in our motor vehicle statutes. "Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to [the broader statutory scheme]. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 466–67, 108 A.3d 1083 (2015).

We begin with the text of § 14-215 (c) (1), pursuant to which the defendant was convicted, which provides: "*Any person who operates any motor vehicle during the period such person's operator's license or right to operate a motor vehicle in this state is under suspension or revocation* on account of a violation of section 14-227a or 14-227m, subdivision (1) or (2) of subsection (a) of section 14-227n or section 53a-56b or 53a-60d or *pursuant to section 14-227b*, or in violation of a restriction or limitation placed on such person's operator's license or right to operate a motor vehicle in this state by the Commissioner of Motor Vehicles pursuant to subsection (i) of section 14-227a or pursuant to an order of the court under subsection (b) of section 14-227j, shall be fined not less than five hundred dollars or more than one thousand dollars and imprisoned not more than one year, and, in the absence of any mitigating circumstances as determined by the court, thirty consecutive days of the sentence imposed may not be suspended or reduced in any manner." (Emphasis added.)

Because the state has prosecuted the § 14-215 (c) (1) charge against the defendant at all times on the basis that the defendant's license was suspended on December 4, 2017, pursuant to § 14-227b (i) (1), we next turn to the text thereof.[4] Section 14-227b (i) (1) provides: "The commissioner [of motor vehicles] shall suspend the operator's license or nonresident operating privilege of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing, or against whom a decision was issued, after a hearing, pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice, for a period of forty-five days. As a condition for the restoration of such operator's license or nonresident operating privilege, such person shall be required to install an ignition interlock device on each motor vehicle owned or operated by such person and, upon such restoration, be prohibited from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j, for the longer of either (A) the period prescribed in subdivision (2) of this subsection for the present arrest and suspension, or (B) the period prescribed in subdivision (1), (2) or (3) of subsection (g) of section 14-227a . . . for the present arrest and conviction, if any."[5]

The state argues, and we agree, that § 14-227b (i) (1) speaks to *two* periods of time, namely, the period of suspension and the period following restoration of the operator's license (or nonresident operating privilege). By using the prefatory language, "[a]s a condition for the restoration of such operator's license or nonresident operating privilege," the legislature clearly and unambiguously created a statutorily mandated condition— i.e., the installation of an IID in any motor vehicle owned or operated by the individual—that must be satisfied before an individual may have his or her license restored and thereupon legally operate a motor vehicle. Stated differently, § 14-227b (i) (1) does not contemplate an interim period between suspension and restoration, whereby an individual whose license or operating privilege has been suspended thereunder could operate a motor vehicle, while escaping the responsibility of installing an IID (and thereupon operating only a motor vehicle equipped with a functioning, approved IID) and avoiding exposure to criminal liability under, inter alia, § 14-215 (c). Applying the foregoing analysis to the present case, we conclude that the defendant's license remained suspended on December 4, 2017, pursuant to § 14-227b (i) (1), because she had not yet installed an IID and had her license restored by that date.

The defendant argues, in contrast, that § 14-227b (i) (1) effectively contains such an interim period, during which an individual who has not restored his or her license and installed an IID can avoid exposure to liabil-

ity under § 14-215 (c) and is subject only to a lesser penalty. As a textual matter, the defendant contends that the forty-five day period of suspension is fixed and cannot be extended by the lack of restoration. We reject the interpretation advanced by the defendant, however, because it would incentivize an individual, whose license or operating privilege has been suspended pursuant to § 14-227b (i) (1), *not* to install an IID and complete the restoration process. In this connection, we conclude such interpretation would yield an absurd result and not one intended by the legislature.

The defendant also relies on *State* v. *Jacobson*, 31 Conn. App. 797, 627 A.2d 474 (1993), aff'd, 229 Conn. 824, 644 A.2d 331 (1994), and *State* v. *Cook*, 36 Conn. App. 710, 653 A.2d 829 (1995), in support of her claim. As the state correctly points out, this reliance is misplaced. In *Jacobson*, the defendant's license was suspended for one year after he was convicted of operating a motor vehicle under the influence of alcohol in violation of General Statutes (Rev. to 1991) § 14-227a.[6] *State* v. *Jacobson*, supra, 799. After the one year period had expired, the defendant was eligible for restoration of his license by presenting proof of financial responsibility to the Commissioner of Motor Vehicles pursuant to General Statutes (Rev. to 1991) § 14-112. Id. The defendant failed to complete this administrative step and was subsequently arrested and convicted of operating a motor vehicle while his license was under suspension in violation of General Statutes (Rev. to 1991) § 14-215 (c). Id. On appeal, this court concluded that the financial responsibility requirement was merely administrative and contained in General Statutes (Rev. to 1991) § 14-112, a separate statute, such that "[n]othing in the statutory scheme . . . indefinitely extends the period of suspension, pursuant to [General Statutes (Rev. to 1991)] § 14-227a, past one year." Id., 804; see also *State* v. *Cook*, supra, 714 ("[In *Jacobson*] [w]e reviewed the language of [General Statutes (Rev. to 1991)] § 14-227a and determined that the suspension provision provided therein was limited to the one year period enumerated. . . . The statute does not require the suspension to continue in effect after the statutory period has expired until the violator has taken the necessary administrative steps to restore his privileges." (Citations omitted.)).

In *State* v. *Cook*, supra, 36 Conn. App. 710, the defendant's nonresident operator's privileges were suspended for six months based on his refusal to take a blood alcohol test pursuant to General Statutes (Rev. to 1991) § 14-227b.[7] Id., 711. After the six month period had expired, the defendant was arrested and convicted of driving while his license was under suspension in violation of General Statutes (Rev. to 1991) § 14-215 (c). Id., 712. On appeal, following the reasoning in *Jacobson*, this court concluded that General Statutes (Rev. to 1991) § 14-227b was "unambiguous" in "subject[ing] a driver to the suspension of his license or operation

privileges for a period of six months. It does not require that the suspension continue beyond the six month period until such time that the driver's privileges are formally restored. Therefore, upon completion of the six month period, a driver's license or operating privileges are no longer suspended on account of a violation of [General Statutes (Rev. to 1991)] § 14-227b and the driver may not be subjected to the enhanced penalties of [General Statutes (Rev. to 1991)] § 14-215 (c)." Id., 714–15.

In deciding *Jacobson* and *Cook*, this court analyzed prior revisions of §§ 14-227a and 14-227b. As the trial court in the present case observed in its memorandum of decision, although *Jacobson* and *Cook* have not been overruled, §§ 14-227a and 14-227b have been amended since those decisions were published. The 1991 revision of § 14-227a at issue in *Jacobson* specified a fixed one year license suspension without statutorily mandated conditions for restoration, and the 1991 revision of § 14-227b at issue in *Cook* contained a fixed six month license suspension, also without statutorily mandated conditions for restoration. Sections 14-227a and 14-227b were amended in 2014, effective in 2015, to shorten the mandatory license suspension period to forty-five days *and* to add the IID requirement in connection with restoration.[8] Accordingly, *Jacobson* and *Cook* are inapplicable to the present case.

Finally, the defendant argues that we should strictly construe the relevant statutes in her favor; in doing so, she presses the application of the rule of lenity. Because the text of § 14-227b (i) (1) concerning the effect of the lack of restoration on the forty-five day period of suspension thereunder is not ambiguous after engaging in the statutory interpretation required by § 1-2z, we decline to apply the rule of lenity. See, e.g., *State* v. *Lutters*, 270 Conn. 198, 219, 853 A.2d 434 (2004) ("courts do not apply the rule of lenity unless a reasonable doubt persists about a statute's intended scope *even after resort to the language and structure, legislative history, and motivating policies of the statute*" (emphasis in original; internal quotation marks omitted)).

In sum, we conclude that, pursuant to § 14-227b (i) (1), the suspension of the defendant's license remained in effect until the defendant had installed an IID and restored her license. Thus, the defendant's license remained suspended on December 4, 2017, the date of her violation of § 14-215 (c) (1). Accordingly, the trial court properly denied the defendant's motion to dismiss as to count one of the state's first substitute information charging the defendant with operating a motor vehicle while her license was under suspension in violation of § 14-215 (c) (1).

B

The defendant also claims that interpreting the rele-

vant motor vehicle statutes to require the installation of an IID before lifting the suspension of a person's license would result in a violation of the equal protection clause of the United States constitution. More specifically, the defendant claims that such an interpretation has a prejudicial effect on indigent individuals who cannot afford the fees associated with the installation of an IID. The state argues, inter alia, that the defendant lacks standing to raise this argument. We agree with the state.

We begin by reviewing certain well established principles of standing. A party's lack of standing to bring a claim implicates the court's subject matter jurisdiction. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). "Generally, standing is inherently intertwined with a court's subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *State* v. *Brito*, 170 Conn. App. 269, 285, 154 A.3d 535, cert. denied, 324 Conn. 925, 155 A.3d 755 (2017).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *State* v. *Long*, 268 Conn. 508, 531–32, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004).

In the present case, the defendant lacks standing to raise an equal protection claim relating to the IID

requirement because she is not aggrieved. As the defendant readily concedes, immediately following the December 4, 2017 hearing in which her application for the alcohol education program was granted, she paid the necessary fees to install an IID and to restore her license. Moreover, she has not identified any specific personal and legal interest that has been specially and injuriously affected. Accordingly, the defendant lacks standing to raise her equal protection claim.

The defendant argues that she has standing pursuant to *State* v. *Bradley*, 195 Conn. App. 36, 223 A.3d 62 (2019), cert. granted, 334 Conn. 925, 223 A.3d 379 (2020). The defendant relies on language in *Bradley* stating that "[our Supreme Court] previously [has] concluded that a genuine likelihood of criminal liability or civil incarceration is sufficient to confer standing. . . . Consequently, because the defendant risks actual prospective deprivation of his liberty interest under the challenged statute, we conclude that he is classically aggrieved, and has standing to challenge the statute." Id., 46–47. The court later clarified that "although a party has only individual standing to challenge alleged violations of his own constitutional rights, such challenges are not necessarily limited to ongoing violations of those rights, but may be directed to future violations of such rights that are reasonably likely to occur." Id., 47.

The defendant does not fall within the carve out discussed in *Bradley*. In order to qualify for standing under *Bradley*, "future violations of [her] rights [must be] reasonably likely to occur." Id. There simply is no basis on this record to find that the defendant is reasonably likely to incur future criminal liability relating to the IID requirement. Therefore, the defendant lacks standing to bring her equal protection claim.[9]

II

The defendant next claims that the trial court erred in denying her motion to dismiss count two of the state's first substitute information charging her with operating a motor vehicle not equipped with an IID in violation of § 14-227k (a) (2). Recognizing that, following the denial of her motion to dismiss, the state filed a second substitute information charging her solely with a violation of § 14-215 (c) (1), the defendant asserts that she is raising this claim "in anticipation of an attempt by the state to resurrect the [violation of § 14-227k (a) (2) charge], or to argue for its consideration as an alternative ground for affirmance." The defendant contends that (1) the state cannot recharge her for violating § 14-227k (a) (2) because the state dropped that charge when it filed the second substitute information solely charging her with a violation of § 14-215 (c) (1), or (2) alternatively, if this court reaches the merits of the trial court's denial of her motion to dismiss count two, then the trial court improperly concluded that it had issued

an unequivocal order on December 4, 2017, prohibiting her from operating a motor vehicle without an IID installed. The state counters, inter alia, that (1) because it did not charge the defendant in its second substitute information with violating § 14-227k (a) (2), the defendant's challenge to the denial of her motion to dismiss as to count two of the first substitute information is moot, and (2) to the extent that the defendant is seeking to litigate any future attempt by the state to recharge her with violating § 12-227k (a) (2), the defendant's claim is not ripe. We agree with the state.

A

We first address whether the defendant's claim challenging the merits of the trial court's denial of her motion to dismiss count two of the state's first substitute information is moot as a result of the state's decision not to charge the defendant with a violation of § 14-227k (a) (2) in its second substitute information. We conclude that the defendant's claim is moot.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . A case is considered moot if [the] court cannot grant . . . any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Glastonbury* v. *Metropolitan District Commission*, 328 Conn. 326, 333, 179 A.3d 201 (2018). "For a case to be justiciable, it is required, among other things, that there be an actual controversy between or among the parties to the dispute . . . . [T]he requirement of an actual controversy . . . is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . . Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Citation omitted; internal quotation marks omitted.) *State* v. *T.D.*, 286 Conn. 353, 361, 944 A.2d 288 (2008). Because mootness implicates a court's subject matter jurisdiction, it presents a question of law over which we exercise plenary review. See *State* v. *Milner*, 309 Conn. 744, 751, 72 A.3d 1068 (2013).

By way of review, following the trial court's denial of the defendant's motion to dismiss counts one and two of the first substitute information, the state filed a second substitute information charging the defendant solely with a violation of § 14-215 (c) (1). Thereafter, the defendant entered a conditional plea of nolo contendere to the charge of § 14-215 (c) (1), the only charge pending against her. Thus, there is no practical relief that we can afford the defendant with regard to count two of the first substitute information, and, therefore, the issue of whether the trial court improperly denied the defendant's motion to dismiss count two thereof is moot.

B

To the extent that the defendant claims that the state cannot recharge her with violating § 14-227k (a) (1) as a result of the incident that occurred on December 4, 2017, we consider whether the defendant's claim is ripe. We conclude that this issue is not justiciable because it is not ripe.

"[J]usticiability comprises several related doctrines, namely, standing, *ripeness*, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Emphasis added; footnote omitted.) *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004). "A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction." *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 91, 713 A.2d 1267 (1998). "[B]ecause an issue regarding justiciability raises a question of law, our appellate review [of the defendant's ripeness claim] is plenary." *Office of the Governor* v. *Select Committee of Inquiry*, supra, 569.

The defendant's claim regarding the state's ability to recharge her with violating § 14-227k (a) (2) is not ripe because it "may never transpire." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 87, 952 A.2d 1 (2008). At oral argument, the state indicated that, although it maintains the right to charge the defendant for a violation of § 14-227k (a) (2), it has no intent to do so. Thus, the issue is not ripe, and, therefore, we decline to address it.

The appeal is dismissed with respect to the denial of the defendant's motion to dismiss the second count of the state's first substitute information; the judgment is affirmed.

In this opinion the other judges concurred.

* The listing of the judges reflects their seniority status on this court as of the date of oral argument.

[1] Notwithstanding the language in the suspension notice, during oral argument before the trial court, the state conceded that the defendant was not restricted by the department to operate a motor vehicle with an IID installed.

[2] The thirty day mandatory minimum term of imprisonment was suspended in light of mitigating circumstances determined by the court. See General Statutes § 14-215 (c) (1).

[3] The trial court stayed the execution of the defendant's sentence until the resolution of this appeal.

[4] It is unclear, but irrelevant to our analysis, why the state did not posit before the trial court that the defendant could be charged with § 14-215 (c) on the separate ground that she was operating a motor vehicle in violation of a restriction placed on her driver's license pursuant to an order of the court pursuant to General Statutes § 14-227j (b), which is another enumerated basis set forth in § 14-215 (c) (1). See General Statutes § 14-227j (b) ("Any person who has been arrested for a violation of section 14-227a or 14-227m, subdivision (1) or (2) of subsection (a) of section 14-227n or section 53a-56b or 53a-60d, may be ordered by the court not to operate any motor vehicle unless such motor vehicle is equipped with an ignition interlock device. Any such order may be made as a condition of such person's release on bail, as a condition of probation or as a condition of granting such person's application for participation in the pretrial alcohol education program under section 54-56g and may include any other terms and conditions as to duration,

use, proof of installation or any other matter that the court determines to be appropriate or necessary."). In light of the condition attached to the defendant's plea of nolo contendere, we limit our analysis to the parties' arguments in connection with the defendant's motion to dismiss, which exclusively focused on the defendant's suspension pursuant to § 14-227b. See General Statutes § 54-94a ("[t]he issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss").

[5] General Statutes § 14-227a (g), which contains similar suspension and restoration language applicable to an individual convicted of a violation of § 14-227a (a), provides in relevant part: "Penalties for operation while under the influence. Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation . . . (C) *have such person's motor vehicle operator's license or nonresident operating privilege suspended for forty-five days and, as a condition for the restoration of such license, be required to install an ignition interlock device on each motor vehicle owned or operated by such person* and, upon such restoration, be prohibited for the one-year period following such restoration from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device. . . ." (Emphasis added.)

[6] General Statutes (Rev. to 1991) § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation, (A) be fined not less than five hundred dollars nor more than one thousand dollars and (B) be (i) imprisoned not more than six months, forty-eight consecutive hours of which may not be suspended or reduced in any manner or (ii) imprisoned not more than six months, with the execution of such sentence of imprisonment suspended entirely and a period of probation imposed requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) *have his motor vehicle operator's license or nonresident operating privilege suspended for one year* . . . ." (Emphasis added.)

[7] General Statutes (Rev. to 1991) § 14-227b (h) provides in relevant part: "The commissioner [of motor vehicles] shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section, of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, or (B) *six months if such person refused to submit to such test or analysis* . . . ." (Emphasis added.)

[8] See Public Acts 2014, No. 14-228, §§ 5 and 6.

[9] We also observe that General Statutes § 14-227o, which was effective on October 1, 2018, provides in relevant part: "Notwithstanding any provision of the general statutes requiring a person subject to an order to install and maintain an ignition interlock device to bear all costs associated with such installation and maintenance, any provider of ignition interlock device services, including installation, maintenance and removal of such devices, may include in a lease agreement with a person required to install such device pursuant to section . . . 14-227a [or] 14-227b . . . a reduction to or an elimination of the charge for such services if such person is indigent. . . ."