# STATE OF CONNECTICUT *v.* ANASTASIA SCHIMANSKI
## (SC 20550)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute ((Rev. to 2017) § 14-227b (i) (1)), the Commissioner of
Motor Vehicles shall suspend, for a period of forty-five days, the motor
vehicle operator's license of a person against whom a decision was
issued concerning, inter alia, a refusal to submit to a blood, breath or
urine test to determine sobriety, and, as a condition for the restoration
of that license, "such person shall be required to install an ignition
interlock device on each motor vehicle owned or operated by such
person and, upon such restoration, be prohibited from operating a motor
vehicle unless such motor vehicle is equipped with a functioning,
approved ignition interlock device" for a specified period of time.

Convicted, on a conditional plea of nolo contendere, of the crime of operating
a motor vehicle with a suspended license in violation of the applicable

§ 36-18, this does not support an inference that the trial court offered the
defendant a continuance to help the state prove that its amendment would
not prejudice the defendant's substantive rights. Here, the trial court deter-
mined that the state had good cause to amend its information and that no
additional or different offense was charged. Although the trial court did
not make an explicit finding that the amendment would not prejudice the
defendant's substantive rights, we presume that it made this finding by
virtue of the fact that it allowed the state to amend its information and a
conclusion that the amendment would not prejudice the defendant's substan-
tive rights is essential to permitting the state to amend its information. See,
e.g., *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 385, 568 A.2d 431 (1990).
Although the trial court offered the defendant a continuance—in the midst
of its consideration of the requirements set forth in § 36-18—its decision to
grant the defendant a continuance was separate from the trial court's distinct
inquiry as to whether the state could amend its information after the start
of trial.

State *v.* Schimanski

statute (§ 14-215 (c) (1)), the defendant appealed to the Appellate Court. The defendant had been arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor, and her license was suspended for forty-five days pursuant to § 14-227b (i) (1) as a result of her refusal to take a chemical alcohol test. Two days after the forty-five day license suspension period lapsed, the defendant allegedly struck another vehicle while operating a motor vehicle that did not have an ignition interlock device installed in it. As a result of that incident, the defendant was charged in the present case with, inter alia, operating a motor vehicle with a suspended license. The defendant moved to dismiss that charge on the ground that she could not have violated § 14-215 (c) (1) because the forty-five day license suspension period ended two days before the incident. The trial court disagreed, concluding that the installation of an ignition interlock device is a mandatory statutory requirement for the restoration of a license that has been suspended under § 14-227b and that the defendant's suspended license was not restored until she had an ignition interlock device installed in her vehicle approximately one month after the incident. On appeal to the Appellate Court from the judgment of conviction, that court affirmed the trial court's judgment, concluding, on the basis of its interpretation of the relevant statutes, that the defendant's license remained suspended following the forty-five day statutory period until she installed the ignition interlock device because § 14-227b (i) (1) mandates the installation of such a device in any motor vehicle operated by a person whose license has been suspended under the statute before the restoration of her license and does not contemplate an interim period during which such person may lawfully operate a motor vehicle without installing such a device. In reaching its decision, the Appellate Court determined that *State* v. *Jacobson* (31 Conn. App. 797), and *State* v. *Cook* (36 Conn. App. 710), on which the defendant relied, were not applicable to the present case because they were decided prior to certain amendments to the relevant statutes that rendered the analysis in those cases inapposite. On the granting of certification, the defendant appealed to this court. *Held* that the Appellate Court incorrectly concluded that § 14-227b (i) (1) extends the suspension of a person's license beyond the specified forty-five day period until the motor vehicle operator subject to the suspension has installed an ignition interlock device, and, accordingly, the judgment of the Appellate Court was reversed insofar as that court upheld the defendant's conviction of operating a motor vehicle with a suspended license, and the case was remanded with direction to reverse the judgment of conviction and to render judgment dismissing the information: this court concluded, after a review of the text of § 14-227b (i) (1) and its relationship to other relevant statutes, that the statute clearly and unambiguously imposes a forty-five day license suspension period, after which the operator's license is no longer "under suspension" for purposes of § 14-215 (c) (1), the plain language of § 14-227b (i) (1)

State *v.* Schimanski

having indicating that the legislature made the installation of an ignition interlock device a prerequisite for the restoration of the operator's license but not for the expiration of the suspension period; moreover, this court, in reading the statute (§ 14-215b) setting forth the penalties for operating a motor vehicle after the expiration of a suspension period and without obtaining reinstatement and § 14-227b (i) (1) together, concluded that the completion of the forty-five day suspension period is necessary, but not a condition, for the restoration of an operator's license under § 14-227b (i) (1) and is separate and distinct from the additional restoration precondition that the operator install an ignition interlock device; furthermore, the Appellate Court incorrectly determined that *Jacobson* and *Cook* were inapplicable to, and controlling of, the statutory interpretation issue in the present case on the ground that the versions of the relevant statutes at issue in those cases predated statutory amendments that added an ignition interlock device requirement as a condition for license restoration, as the courts in both of those cases based their decisions on the fixed, unqualified language limiting the duration of the statutory suspension periods and concluded that, in the absence of express statutory language to the contrary, requirements for license restoration do not concurrently operate as preconditions for the termination of a license suspension period, and the rationale in *Jacobson* and *Cook* was not rendered obsolete by virtue of the statutory amendments, as the versions of the statutes applicable to the present case still provided a fixed, unqualified license suspension period; in addition, contrary to the Appellate Court's conclusion that the defendant's interpretation of § 14-227b (i) (1) would yield an absurd result because a person whose license has been suspended pursuant to that statute would have an incentive not to install an ignition interlock device and thereby complete the restoration process in order to avoid harsher penalties, a related statute ((Rev. to 2017) § 14-227k (a)) not only prohibits the exact conduct that the Appellate Court feared would be incentivized, namely, the operation of a motor vehicle without an ignition interlock device by an individual who is subject to the provisions of § 14-227b (i) (1), but also imposes the same penalties for a violation of its provisions as § 14-215 (c) (1), and, although certain regulations adopted by the Commissioner of Motor Vehicles that implement the provisions of § 14-227b supported the Appellate Court's interpretation of the statue, those regulations were entitled to no deference because the statute unambiguously limits the suspension period to forty-five days, and an agency's interpretation of a statute is entitled to deference only when, inter alia, the statute is ambiguous.

Argued February 23—officially released August 23, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of operating a motor vehicle with a sus-

State *v.* Schimanski

pended license, avoidance of an interlock ignition device, and evading responsibility in the operation of a motor vehicle, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the court, *Spader, J.*, denied the defendant's motion to dismiss the charges of operating a motor vehicle with a suspended license and avoidance of an interlock ignition device; thereafter, the state filed a second substitute information charging the defendant with the crime of operating a motor vehicle with a suspended license; subsequently, the defendant was presented to the court on a conditional plea of nolo contendere to the charge of operating a motor vehicle with a suspended license; judgment of guilty in accordance with the plea, from which the defendant appealed to the Appellate Court, *Elgo*, *Bright* and *Moll, Js.*, which dismissed the appeal with respect to the trial court's denial of the defendant's motion to dismiss the charge of avoidance of an interlock ignition device in the state's first substitute information and affirmed the trial court's judgment denying the defendant's motion to dismiss the charge of operating a motor vehicle with a suspended license, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, chief state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Anastasia Schimanski, appeals[1] from the judgment of the Appellate Court

[1] This court granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly uphold the trial court's denial of the defendant's motion to dismiss the charge of operating a motor vehicle while her operator's license was under suspension

State *v.* Schimanski

upholding the trial court's denial of the defendant's
motion to dismiss the charge of operating a motor vehi-
cle while her license was under suspension in violation
of General Statutes § 14-215 (c) (1).[2] The defendant
claims that the Appellate Court incorrectly determined
that the forty-five day license suspension period
imposed by General Statutes (Rev. to 2017) § 14-227b
(i) (1)[3] on persons who refuse to submit to a chemical
analysis of their blood, breath, or urine, as required by
§ 14-227b (b), does not terminate upon the expiration
of the forty-five days specified in the statute but, rather,
continues indefinitely until such time as the persons
subject to the suspension install an ignition interlock
device (IID) on their vehicles. The defendant contends
that, because the conduct underlying her conviction

pursuant to General Statutes § 14-215 (c) (1)?'' *State* v. *Schimanski*, 336
Conn. 903, 903–904, 242 A.3d 1009 (2021).

[2] General Statutes § 14-215 (c) (1) provides in relevant part: ''Any person
who operates any motor vehicle during the period such person's operator's
license or right to operate a motor vehicle in this state is under suspension
. . . pursuant to section 14-227b . . . shall be fined not less than five hun-
dred dollars or more than one thousand dollars and imprisoned not more
than one year, and, in the absence of any mitigating circumstances as deter-
mined by the court, thirty consecutive days of the sentence imposed may
not be suspended or reduced in any manner.''

[3] General Statutes (Rev. to 2017) § 14-227b (i) (1) provides in relevant
part: ''*The commissioner shall suspend the operator's license* . . . of a
person . . . against whom a decision was issued, after a hearing, pursuant
to subsection (h) of this section, as of the effective date contained in the
suspension notice, *for a period of forty-five days. As a condition for the
restoration of such operator's license* . . . *such person shall be required
to install an ignition interlock device on each motor vehicle owned or
operated by such person and, upon such restoration, be prohibited from
operating a motor vehicle unless such motor vehicle is equipped with a
functioning, approved ignition interlock device*, as defined in section 14-
227j, for the longer of either (A) the period prescribed in subdivision (2) of
this subsection for the present arrest and suspension, or (B) the period
prescribed in subdivision (1), (2) or (3) of subsection (g) of section 14-
227a or subdivision (1), (2) or (3) of subsection (c) of section 14-227m or
subdivision (1) or (2) of subsection (c) of section 14-227n for the present
arrest and conviction, if any.'' (Emphasis added.)

Hereinafter, unless otherwise indicated, all references to § 14-227b in this
opinion are to the 2017 revision of the statute.

State *v.* Schimanski

occurred after the expiration of the forty-five day suspension period authorized by § 14-227b (i) (1), the state could not lawfully charge her pursuant to § 14-215 (c) (1).[4] We agree with the defendant and, accordingly, reverse in part the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On September 18, 2017, the defendant was arrested and charged with operating a motor vehicle while under the influence in violation of General Statutes [Rev. to 2017] § 14-227a.[5] Pursuant to . . . § 14-227b (i), the Department of Motor Vehicles (department) suspended the defendant's license for a period of forty-five days, beginning on October 18, 2017, and ending on December 2, 2017, as a result of the defendant's refusal to take a chemical alcohol test. On December 4, 2017, the trial court, *Spader, J.*, granted the defendant's application for the pretrial alcohol education program. See General Statutes § 54-56g. In connection with its consideration of the application, the court engaged in the following colloquy with the defendant:

" 'The Court: One of the key things about the alcohol education program is if you violate the [department's] interlock device program, that's a violation of the alcohol education program. So just—don't be operating a motor vehicle unless you have the interlock device attached to it.

" '[The Defendant]: Yes. Sir—I'm sorry—I don't own a vehicle.

" 'The Court: No—yeah, well, the thing is, don't borrow a vehicle either that doesn't have an interlock device

[4] As we explain more fully hereinafter, the defendant's conduct may have violated other motor vehicle statutes. For reasons unknown, the state failed to charge her pursuant to them.

[5] Hereinafter, unless otherwise indicated, all references to § 14-227a in this opinion are to the 2017 revision of the statute.

State *v.* Schimanski

on it—you know—if there's—once your license is
restored, once your privileges are restored, okay?

" '[The Defendant]: Yes, sir.'

"That same day, shortly after leaving the courthouse
following the hearing, the defendant operated a motor
vehicle, which did not have an IID installed in it, and
allegedly struck another motor vehicle. As a result of
that incident, the defendant was issued a misdemeanor
summons and complaint, giving rise to the present case,
charging her with operating a motor vehicle while her
license was under suspension in violation of § 14-215
. . . . On February 23, 2018, the state filed its first
substitute information. In count one, the state charged
the defendant with operating a motor vehicle while her
license was under suspension in violation of § 14-215
(c) (1). In count two, the state charged the defendant
with operating a motor vehicle not equipped with an
IID in violation of [General Statutes (Rev. to 2017)]
§ 14-227k (a) (2).[6] In count three, the state charged the
defendant with evasion of responsibility in the opera-
tion of a motor vehicle in violation of [General Statutes]
§ 14-224 (b) (3).

"On March 5, 2018, the defendant filed a motion to
dismiss counts one and two of the first substitute infor-
mation. With respect to count one, the defendant argued
that she could not properly be charged with having
committed a violation of § 14-215 (c) (1) on December
4, 2017, because, at such time, her license was not under
suspension on account of § 14-227b (i) (1). According
to the defendant, the forty-five day suspension of her
license pursuant to § 14-227b (i) (1) had expired on
December 2, 2017. With respect to count two, the defen-
dant argued that she was not obligated on December
4, 2017, either by direction of the department or by

_____

[6] Hereinafter, unless otherwise indicated, all references to § 14-227k in
this opinion are to the 2017 revision of the statute.

State *v.* Schimanski

order of the trial court, to operate a motor vehicle with an IID installed, and, thus, she could not properly be charged with having violated § 14-227k (a) (2) on that date.[7]

"On March 19, 2018, after having heard argument on March 9, 2018, the trial court issued a memorandum of decision denying the defendant's motion to dismiss in its entirety. As to count one charging the defendant with a violation of § 14-215 (c) (1), the court determined that, pursuant to §§ 14-227a and 14-227b, the installation of an IID is a 'mandatory statutory requirement implemented by the state legislature that must be fulfilled to "unsuspend" a suspended license.' The court further determined that the defendant did not have an IID installed on December 4, 2017, and that the department did not lift her suspension and restore her privilege to operate a motor vehicle until January 2, 2018, by which time the defendant had installed an IID. . . . In light of the foregoing, with respect to count one, the court concluded that the state could prosecute the defendant for a violation of § 14-215 (c) (1). With respect to count two, the court determined that, during the hearing held on December 4, 2017, it unequivocally and directly had ordered the defendant not to operate any motor vehicle without an IID installed. Thus, the court concluded, the state could prosecute the defendant for a violation of § 14-227k (a) (2).

"On May 9, 2018, the state filed a second substitute information charging the defendant solely with operating a motor vehicle while her license was under suspension in violation of § 14-215 (c) (1). On May 25, 2018, pursuant to General Statutes § 54-94a, the defendant

_____

[7] "Notwithstanding the language in the suspension notice, during oral argument before the trial court, the state conceded that the defendant was not restricted by the department to operate a motor vehicle with an IID installed." *State* v. *Schimanski*, 201 Conn. App. 164, 168 n.1, 242 A.3d 119 (2020).

State *v.* Schimanski

entered a plea of nolo contendere to that charge, conditioned on her right to take an appeal from her conviction on the basis of the court's denial of her motion to dismiss. After a canvass, the court accepted the conditional plea, entered a finding of guilty, and sentenced the defendant to a term of one year of incarceration, execution suspended, with one year of probation.'' (Footnote added; footnote in original.) *State* v. *Schimanski*, 201 Conn. App. 164, 167–70, 242 A.3d 119 (2020). "The thirty day mandatory minimum term of imprisonment was suspended in light of mitigating circumstances determined by the court. See General Statutes § 14-215 (c) (1)." *State* v. *Schimanski*, supra, 170 n.2.[8]

---

[8] As the Appellate Court noted, it is unclear, but irrelevant to our analysis, why the state did not argue before the trial court that the defendant could also be charged under § 14-215 (c) (1) on the alternative theory that she had violated "a restriction or limitation placed on [her] license or right to operate a motor vehicle . . . pursuant to an order of the court under subsection (b) of section 14-227j . . . ." General Statutes § 14-215 (c) (1); see *State* v. *Schimanski*, supra, 201 Conn. App. 172 n.4. General Statutes (Rev. to 2017) § 14-227j (b) provides in relevant part: "Any person who has been arrested for a violation of section 14-227a . . . may be ordered by the court not to operate any motor vehicle unless such motor vehicle is equipped with an ignition interlock device. Any such order may be made . . . as a condition of granting such person's application for participation in the pretrial alcohol education program under section 54-56g . . . ." However, General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such . . . motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ." Moreover, "in the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a." *State* v. *Revelo*, 256 Conn. 494, 503, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).

The parties' arguments concerning the defendant's motion to dismiss are entirely centered on whether the defendant's license was suspended for refusing a chemical blood alcohol test pursuant to § 14-227b (i) (1) at the

State *v.* Schimanski

On appeal to the Appellate Court, the defendant claimed that, under *State* v. *Jacobson*, 31 Conn. App. 797, 627 A.2d 474 (1993), aff'd, 229 Conn. 824, 644 A.2d 331 (1994), and *State* v. *Cook*, 36 Conn. App. 710, 653 A.2d 829 (1995), "her failure to have installed an IID did not extend the suspension of her license under § 14-227b (i) (1) beyond the forty-five day period, which expired on December 2, 2017, and, as a result, she could not have been charged with having committed a violation of § 14-215 (c) (1) on December 4, 2017.'' *State* v. *Schimanski*, supra, 201 Conn. App. 170. The Appellate Court disagreed, concluding that "the legislature clearly and unambiguously created a statutorily mandated condition—i.e., the installation of an IID . . . that must be satisfied before an individual may have his or her license restored and thereupon legally operate a motor vehicle. Stated differently, § 14-227b (i) (1) does not contemplate an interim period between suspension and restoration, whereby an individual whose license or operating privilege has been suspended thereunder could operate a motor vehicle, while escaping the responsibility of installing an IID . . . and avoiding exposure to criminal liability under, inter alia, § 14-215 (c).'' Id., 174. To conclude otherwise, the court reasoned, "would incentivize an individual, whose license or operating privilege has been suspended pursuant to § 14-227b (i) (1), *not* to install an IID and complete the restoration process''; (emphasis in original) id., 174–75; leading to "an absurd result and not one intended by the legislature.'' Id., 175.

In reaching its determination, the Appellate Court rejected the defendant's contention that *Jacobson* and

time she operated a motor vehicle, as this was the only charge on which the state pursued its prosecution. Therefore, the narrow issue before this court is whether the trial court erred in denying the defendant's motion to dismiss the state's charge under § 14-215 (c) (1) based on a theory that the defendant operated a motor vehicle while her license was under suspension, not whether the state was at liberty to charge the defendant under § 14-215 (c) (1) generally.

State *v.* Schimanski

*Cook*, which held that the license suspension periods imposed for operating a motor vehicle while under the influence of alcohol (*Jacobson*) and for refusing to submit to a blood alcohol test (*Cook*) do not continue beyond the fixed time periods specified by statute until the person whose license was suspended completes the administrative steps required for restoration of the license, supported her claim. Id., 175–77. The court reasoned that, ''[i]n deciding *Jacobson* and *Cook*, [it] analyzed prior revisions of §§ 14-227a and 14-227b.[9] As the trial court in the present case observed in its memorandum of decision, although *Jacobson* and *Cook* have not been overruled, §§ 14-227a and 14-227b have been amended since those decisions were published. The [1989] revision of § 14-227a at issue in *Jacobson* specified a fixed one year license suspension without statutorily mandated conditions for restoration, and the 1991 revision of § 14-227b at issue in *Cook* contained a fixed six month license suspension, also without statutorily mandated conditions for restoration. Sections 14-227a and 14-227b were amended in 2014, effective in 2015, to shorten the mandatory license suspension period to forty-five days *and* to add the IID requirement in connection with restoration. [See Public Acts 2014, No. 14-228, §§ 5 and 6.] Accordingly, *Jacobson* and *Cook* are inapplicable to the present case.'' (Emphasis in original;

---

[9] General Statutes (Rev. to 1989) § 14-227a (h), at issue in *Jacobson*, provides in relevant part: ''Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation . . . have his motor vehicle operator's license or nonresident operating privilege suspended for one year . . . .''

General Statutes (Rev. to 1991) § 14-227b (h), at issue in *Cook*, provides in relevant part: ''The commissioner [of motor vehicles] shall suspend the operator's license or nonresident operating privilege . . . of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of . . . six months if such person refused to submit to such test or analysis . . . .''

State *v.* Schimanski

footnote added; footnote omitted.) *State* v. *Schimanski*, supra, 201 Conn. App. 177.

On appeal to this court following our grant of certification, the defendant claims that the Appellate Court erred in interpreting § 14-227b (i) (1) as extending the suspension of a person's license beyond the specified forty-five days until the motor vehicle operator subject to the suspension has installed an IID.[10] The defendant contends that the Appellate Court's decision is contrary to the plain language of the statute, controlling case law—specifically, *Jacobson* and *Cook*, which the defendant argues are fully applicable to the present case— and the legislative history. More specifically, the defendant argues that the text of § 14-227b sets forth a suspension period that is strictly limited to forty-five days and that the operation of the statute within the entire statutory framework unambiguously indicates that preconditions for restoring an individual's license do not concurrently operate as preconditions for terminating a license suspension period. We agree.

[10] In her brief to this court, the defendant also claims that the Appellate Court's interpretation of §§ 14-227a and 14-227b violates the equal protection clause of the United States constitution and the equal protection of the law guaranteed by the Connecticut constitution. Specifically, the defendant argues that interpreting the statutes as requiring installation of an IID as a prerequisite for ending the suspension periods imposed under those statutes would have a disparate impact along socioeconomic lines, resulting in shorter suspension periods for individuals with the economic means to pay the fees associated with installing and maintaining the IID, and longer suspension periods for indigent persons unable to pay for such fees. In light of our determination that the Appellate Court incorrectly concluded that the suspension periods specified in §§ 14-227a and 14-227b continue until an IID is installed, it is unnecessary for us to address this claim. We note, however, that General Statutes § 14-227o, which was enacted subsequent to the defendant's conviction; see Public Acts 2018, No. 18-30, § 1; provides in relevant part that "any provider of ignition interlock device services . . . may include in a lease agreement with a person required to install such device . . . a reduction to or an elimination of the charge for such services if such person is indigent. . . ." As a result of its permissive character, § 14-227o potentially mitigates the issue raised by the defendant but, without more, does not go so far as to render the claim moot.

State *v.* Schimanski

We begin our analysis by setting forth the standard of review and legal principles governing our resolution of this appeal. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 12, 160 A.3d 1034 (2017).

The defendant's appeal also requires us to interpret various provisions of our state's motor vehicle statutes. "Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language . . . ." (Internal quotation marks omitted.) *State* v. *Pond*, 315 Conn. 451, 466, 108 A.3d 1083 (2015). "In seeking to determine the meaning of a statute, [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to the broader statutory scheme. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z. The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Dudley*, 332 Conn. 639, 645, 212 A.3d 1268 (2019).

The defendant was charged and convicted pursuant to § 14-215 (c) (1), which provides in relevant part that

State *v.* Schimanski

"[a]ny person who operates any motor vehicle during the period such person's operator's license or right to operate a motor vehicle in this state is *under suspension* . . . on account of a violation of section 14-227a . . . *or pursuant to section 14-227b*, or in violation of a restriction or limitation placed on such person's operator's license or right to operate a motor vehicle in this state by the Commissioner of Motor Vehicles pursuant to subsection (i) of section 14-227a or pursuant to an order of the court under subsection (b) of section 14-227j . . . ." (Emphasis added.)

Whether the defendant's license was "under suspension" within the meaning of § 14-215 (c) (1) turns on our interpretation of § 14-227b (i) (1), which provides in relevant part: "The commissioner shall suspend the operator's license . . . of a person . . . against whom a decision was issued, after a hearing, pursuant to subsection (h) of this section, as of the effective date contained in the suspension notice, *for a period of forty-five days. As a condition for the restoration of such operator's license . . . such person shall be required to install an ignition interlock device on each motor vehicle owned or operated by such person and, upon such restoration, be prohibited from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device*, as defined in section 14-227j . . . ."[11] (Emphasis added.)

---

[11] Although the defendant's license was suspended pursuant to § 14-227b (i) (1), we note that § 14-227a (g) also requires suspension of an operator's license for operating a motor vehicle while under the influence of alcohol or drugs in violation of § 14-227a (a), using very similar statutory language. General Statutes (Rev. to 2017) § 14-227a (g) provides: "Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation . . . *have such person's motor vehicle operator's license . . . suspended for forty-five days and, as a condition for the restoration of such license, be required to install an ignition interlock device* on each motor vehicle owned or operated by such person and, upon such restoration, be prohibited for the one-year period following such restoration from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j . . . ." (Emphasis added.)

The state argues that the phrase "[a]s a condition for the restoration," as used in § 14-227b (i) (1), indicates the legislature's intent that the license suspension period last a *minimum* of forty-five days and continue until such time as the individual installs an IID. This reading, however, cannot be reconciled with the plain language of the text. Webster's Third New International Dictionary defines the word "condition" as "a circumstance that is essential to the appearance or occurrence of something else: prerequisite . . . ." Webster's Third New International Dictionary (2002) p. 473; see also *Southern New England Telephone Co.* v. *Public Utilities Commission*, 144 Conn. 516, 522, 134 A.2d 351 (1957) (defining "condition" as "[t]hat which limits or modifies the existence or character of something . . . a restriction or qualification" (internal quotation marks omitted)). Here, the legislature made the installation of an IID a prerequisite "for the restoration" of the operator's license, *not* for terminating the operator's suspension. Under well established rules of statutory construction, we must assume that, if the legislature had intended the latter, it would have indicated such intent expressly. See, e.g., *In re Jusstice W.*, 308 Conn. 652, 673, 65 A.3d 487 (2012) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)) "[W]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *State* v. *Josephs*, 328 Conn. 21, 27, 176 A.3d 542 (2018).

Similarly, if the forty-five day suspension period mandated by the statute was intended to operate as a baseline *minimum* suspension period, the legislature would have unambiguously indicated that intent as well, just

State *v.* Schimanski

as it has done in numerous other statutes. See, e.g., General Statutes § 14-44f ("[i]f the [C]ommissioner [of Motor Vehicles] finds that . . . the holder of [a commercial driver's] license has supplied false information in order to obtain the license, he shall withhold the issuance of the license or suspend the license for sixty days, and thereafter until the true and correct information is submitted"); General Statutes § 14-223 (b) ("Any person who violates this subsection . . . [and] causes the death or serious physical injury . . . of another person, such person . . . shall have [his or her] motor vehicle operator's license suspended for one year for the first offense . . . . For any subsequent offense . . . if any prior offense by such person under this subsection caused, and such subsequent offense causes, the death or serious physical injury . . . of another person, such person shall . . . have [his or her] motor vehicle operator's license suspended for not less than eighteen months nor more than two years . . . ."); General Statutes § 20-233 ("[a]ny person . . . who violates any provision of [specified statutes] shall . . . for the second offense . . . [have] his license . . . suspended for such period, not less than six months, as the [B]oard [of Examiners] determines"); General Statutes § 26-61 (b) ("the [C]ommissioner [of Energy and Environmental Protection] may suspend any such . . . license . . . for not more than three years, except that for a third violation . . . the suspension period shall be not less than five years and may be indefinite").[12] These statutes plainly demonstrate that,

---

[12] The state points to the language in General Statutes (Rev. to 2017) § 14-36 (g) (7), which provides that the Commissioner of Motor Vehicles may restrict a person's license by requiring an IID if "such person's operator's license [was] suspended under [§ 14-227b (i)] and [he or she] has served *not less than forty-five days of the prescribed period of such suspension*," to support its assertion that § 14-227b (i) (1) provides for a forty-five day suspension period, plus the time it takes to install an IID. (Emphasis added.) We are not persuaded. The statutory language refers to the minimum period of time a person must *serve* on suspension before he or she may be subject to an IID requirement, not a minimum suspension period that may be *imposed*.

State *v.* Schimanski

when the legislature chooses to do so, it is perfectly capable of suspending a license for a minimum period of time and, thereafter, extending the suspension until such time as the occurrence of a specific event.

In reaching a contrary conclusion, it is apparent that the Appellate Court failed to take into account several related statutes governing license suspension, restoration, and the IID requirement that, when read together with § 14-227b (i) (1), make clear that license restoration does not automatically occur upon the expiration of the suspension period. See, e.g., *Maghfour* v. *Waterbury*, 340 Conn. 41, 46, 262 A.3d 692 (2021) ("§ 1-2z directs us first to consider the text of the statute itself *and its relationship to other statutes*" (emphasis added; internal quotation marks omitted)). Two such statutes, General Statutes §§ 14-215b and 14-227k, are particularly instructive in this regard.

Section 14-215b provides in relevant part: "Any person whose motor vehicle operator's license *has been suspended* who operates a motor vehicle *after the expiration of such period of suspension without obtaining the reinstatement* of such license shall (1) during the first sixty days after such expiration, be deemed to have failed to renew such license and be subject to the penalty for failure to renew a motor vehicle operator's license under subsection (c) of section 14-41 . . . . *Any operator so charged shall not be prosecuted under section 14-215 for the same act constituting a violation under this section.*" (Emphasis added.) Section 14-215b indicates that the conditions for restoration are unrelated to the period of suspension and that the legislature clearly contemplated an interim period postsuspension during which, although the person's operator's license

Moreover, the use of the language, "the prescribed period," undermines the state's position by referring to the forty-five days in relatively definitive terms.

State *v.* Schimanski

is no longer suspended, the person's driving privileges have yet to be restored.[13] Our conclusion that the statutory scheme contemplates a postsuspension, prerestoration interim period accords with the Appellate Court's interpretation of § 14-215b in *State* v. *Vlahos*, 138 Conn. App. 379, 51 A.3d 1173 (2012), cert. denied, 308 Conn. 913, 61 A.3d 1101 (2013). In *Vlahos*, the court stated: "The overall legislative scheme is quite plain and unambiguous. [General Statutes §] 14-36 (a) provides that no person shall operate a motor vehicle on a public high-

---

[13] Although §§ 14-227b and 14-215b do not define the words "restoration" and "reinstatement," as used in those statutes, their plain meaning and application in their corresponding statutory contexts indicate that they are intended to be applied synonymously. See 13 Oxford English Dictionary (2d Ed. 1998) pp. 539, 754 (defining "reinstatement" as a synonym for "restoration" and defining "restoration" as "the fact of being restored or *reinstated*" (emphasis added)); Webster's Third New International Dictionary (2002) pp. 1915, 1936 (defining "reinstatement" as "the action of replacing or *restoring* the effectiveness of (as something damaged, worn out, or *lapsed*)," and defining "restoration" as "a bringing back to or putting back into a former position or condition: *reinstatement*, renewal, reestablishment" (emphasis added)). Moreover, the legislature appears to employ the terms interchangeably throughout the statutory scheme, and there is no language in the statutes that would suggest otherwise. See General Statutes (Rev. to 2017) § 14-227b (h) ("reinstate such license or operating privilege"); General Statutes (Rev. to 2017) § 14-227b (i) (1) ("restoration of such operator's license or operating privilege"); see also General Statutes (Rev. to 2017) § 14-227a (g) ("restoration of such license"); General Statutes § 14-227*l* ("reinstatement of the operator's license or nonresident operating privilege").

It should be noted that the words "restoration" and "reinstated" are both included in § 14-227b. Although we previously have stated that "[t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . *and that it intended the terms to have different meanings*"; (internal quotation marks omitted) *1st Alliance Lending, LLC* v. *Dept. of Banking*, 342 Conn. 273, 285 n.3, 269 A.3d 764 (2022); when, as in the present case, we conclude that the language of the statute is clear and unambiguous under the plain meaning analysis set forth in § 1-2z, we are restrained from making such presumptions in determining legislative intent. See *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 532 n.8, 970 A.2d 57 (2009) ("[Legal] presumptions are rules of construction and, accordingly, are to be used only after we have determined that a statute is ambiguous pursuant to § 1-2z. If we determine that no such ambiguity exists, these presumptions are inapplicable.").

State *v.* Schimanski

way until such person has obtained an operator's license. *If one then loses driving privileges, through either suspension* or inadvertence, one may not operate again until he or she has obtained a license. Sections 14-215b and 14-41 provide exceptions, but *functionally one's status reverts to that of an unlicensed driver until one becomes licensed again.*'' (Emphasis added.) *State* v. *Vlahos*, supra, 138 Conn. App. 389.

Consequently, reading §§ 14-227b (i) (1) and 14-215b together indicates that completion of the forty-five day suspension period is necessary, but not a condition, for restoration of one's operator's license under § 14-227b (i) (1) and is separate and distinct from the additional restoration precondition that the operator install an IID. Thus, an operator's suspension period could expire without the person's installation of an IID, which would make it a violation of other statutes if the person were to operate a motor vehicle,[14] but not a violation of § 14-215 (c) (1), i.e., operating a motor vehicle with a suspended license. Accordingly, after considering the language of § 14-227b (i) (1) and its relationship to other relevant statutes, we conclude that the statute clearly and unambiguously imposes a forty-five day license suspension period, after which, although the person is prohibited from operating a motor vehicle without an IID and is subject to the supplementary requirement of installing an IID as a condition for restoring his or her license, the license is no longer ''suspended'' for purposes of § 14-215 (c) (1).

Indeed, were we to adopt the Appellate Court's reading of the statute and conclude that termination of the

---

[14] See General Statutes (Rev. to 2017) § 14-215b (operation after expiration of period of suspension and without obtaining reinstatement of license); General Statutes (Rev. to 2017) § 14-227k (a) (avoidance of or tampering with IID). In this case, the defendant was initially charged with a violation of § 14-227k (a) for avoidance of an IID, a charge the trial court specifically held the state could pursue. For reasons unknown, the state chose not to do so.

State *v.* Schimanski

suspension period is conditioned on the installation of an IID, we would have to conclude that all restoration requirements, not just the IID requirement, similarly operate as conditions that must be satisfied before the license suspension period expires. This would render all other conditions necessary for restoration, such as restoration fees; see General Statutes § 14-50b (b) ("[a]ny person whose motor vehicle registration or right of operation of a motor vehicle in this state has been suspended or revoked . . . shall pay a restoration fee . . . prior to . . . the restoration of such registration or such right of operation"); or proof of insurance coverage; see General Statutes § 14-213b (c) ("[n]o operator's license which has been suspended pursuant to this subsection shall be restored until the owner has provided evidence to the commissioner that he maintains the security required by section 38a-371 or any other security requirements imposed by law for each motor vehicle registered in his name"); to functionally extend suspension periods until those prerequisites for restoration are met, which is inconsistent with prior Appellate Court case law. See *State* v. *Jacobson*, supra, 31 Conn. App. 803–804 (holding that administrative requirement of providing proof of financial responsibility to restore license pursuant to General Statutes (Rev. to 1989) § 14-112 may not indefinitely extend one year suspension imposed by General Statutes (Rev. to 1989) § 14-227a); see also *State* v. *Cook*, supra, 36 Conn. App. 714–15 (holding that categorical statutory six month suspension period pursuant to General Statutes (Rev. to 1991) § 14-227b may not be extended).

We disagree with the Appellate Court that *State* v. *Jacobson*, supra, 31 Conn. App. 797, and *State* v. *Cook*, supra, 36 Conn. App. 710, are inapplicable in light of subsequent revisions to the statutory scheme. The defendant relies on these cases for the proposition that, when a statute provides a strict, unqualified, and spe-

State *v.* Schimanski

cific license suspension period, that period may not be
extended beyond the specified term, and the expiration
of such term is not contingent on fulfillment of any
statutory condition required for license restoration. We
conclude that the Appellate Court incorrectly deter-
mined that *Jacobson* and *Cook* are not controlling
because the versions of §§ 14-227a and 14-227b at issue
in those cases predate the 2014 amendments to those
statutes, which added the IID requirement as a condi-
tion for license restoration. See *State* v. *Schimanski*,
supra, 201 Conn. App. 177.[15]

In *Jacobson*, the defendant's operator's license was
suspended for one year after he was convicted of
operating a motor vehicle while under the influence of
alcohol in violation of General Statutes (Rev. to 1989)
§ 14-227a.[16] *State* v. *Jacobson*, supra, 31 Conn. App. 799.
After the one year suspension period ended, the defen-

---

[15] The state makes the additional argument that *Jacobson* and *Cook* are
distinguishable because the defendants in those cases were not operating
under operating under the influence based suspensions but were operating
under suspensions imposed by a failure to complete administrative steps
required for restoration. The state also argues that the cases are distinguish-
able because the defendants in *Jacobson* and *Cook* were "eligible" for restora-
tion at the time of their arrests, whereas the defendant in the present case
was not eligible until she installed an IID. We find no merit to either of
these arguments. First, the courts in *Jacobson* and *Cook* both held that the
licenses of the defendants in those cases were not under suspension; *State*
v. *Cook*, supra, 36 Conn. App. 715; *State* v. *Jacobson*, supra, 31 Conn. App.
804; and it would be nonsensical to differentiate between different kinds
of suspensions for purposes of § 14-215 (c). Second, the defendants in those
cases and the defendant in the present were all subject to conditions for
restoration that they failed to complete prior to operating a motor vehicle.
See *State* v. *Cook*, supra, 711–12; *State* v. *Jacobson*, supra, 799; Contrary to
the state's arguments, there is nothing in the statutory framework that
distinguishes one condition for restoration from another for purposes of
determining who may be considered "eligible" for restoring his or her license.

[16] General Statutes (Rev. to 1989) § 14-227a (h) provides in relevant part:
"Any person who violates any provision of subsection (a) of this section
shall: (1) For conviction of a first violation . . . have his motor vehicle
operator's license or nonresident operating privilege suspended for one
year . . . ."

State *v.* Schimanski

dant was required to provide proof of financial responsibility to the Commissioner of Motor Vehicles in order to have his license restored pursuant to General Statutes (Rev. to 1989) § 14-112.[17] Id. Subsequent to the expiration of the defendant's suspension, but prior to his presenting the proof of financial responsibility required for restoring his license, the defendant was convicted of operating a motor vehicle while under suspension in violation of General Statutes (Rev. to 1991) § 14-215 (c). Id. On appeal, he claimed that the state improperly had charged him with operating a motor vehicle while his license was under suspension because the one year suspension period imposed by General Statutes (Rev. to 1989) § 14-227a had already expired at the time of the commission of the charged offense. Id., 800. The Appellate Court agreed. Id., 803–804. In doing so, the court explained that "[the] legislature has set out a comprehensive scheme for punishing violators of our operating while intoxicated statutes. That scheme unambiguously mandates a one year suspension of a violator's operator's license under § 14-227a and provides that a license shall be restored upon proof of financial responsibility in another section, § 14-112.

_____

[17] General Statutes (Rev. to 1989) § 14-112 (a) provides in relevant part: "To entitle any person to receive or retain a motor vehicle operator's license or certificate of registration of any motor vehicle when, in the opinion of the commissioner, such person has violated . . . subsection (a) of section 14-227a . . . the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars . . . . If any person fails to furnish such proof, the commissioner shall, until such proof is furnished, suspend or revoke the license of such person to operate a motor vehicle or refuse to return any license which has been suspended or revoked in accordance with the provisions of section 14-111 . . . . Prior to such suspension, revocation or withdrawal, notice thereof shall be given by the commissioner by a notice forwarded by bulk certified mail to the address of such person as shown by the records of the commissioner. . . ."

State *v.* Schimanski

Nothing in the statutory scheme, however, indefinitely extends the period of suspension, pursuant to § 14-227a, past one year. *If the legislature chooses to amend § 14-215 (c) to extend the period of suspension of a license beyond one year, and until the defendant has complied with § [14-112], it may do so. Meanwhile, we are bound by the present language of § 14-215 (c).* The defendant . . . was not charged with a violation of a statute regarding failure to show financial responsibility or of a statute relating to the administrative steps necessary to restore a license.''[18] (Emphasis added.) Id.

In *Cook*, the defendant's nonresident operator's privileges were suspended for six months pursuant to General Statutes (Rev. to 1991) § 14-227b[19] after the defendant refused to take a blood alcohol test mandated by the statute. *State* v. *Cook*, supra, 36 Conn. App. 711.

_____

[18] On appeal, we adopted the Appellate Court's reasoning in *Jacobson* and forwent further explication on the matter, stating that ''[t]he issue on which we granted certification was properly resolved in the Appellate Court's thoughtful and thorough unanimous opinion. It would serve no useful purpose for this court to repeat the discussion contained therein.'' *State* v. *Jacobson*, 229 Conn. 824, 828, 644 A.2d 331 (1994).

The original text of the Appellate Court's decision in *Jacobson* stated: ''If the legislature chooses to amend § 14-215 (c) to extend the period of suspension of a license beyond one year, and until the defendant has complied with § 14-211, it may do so.'' *State* v. *Jacobson*, supra, 31 Conn. App. 804. We believe that the Appellate Court's reference to § 14-211 was a scrivener's error and that the court intended to reference § 14-112, which makes more sense in context because § 14-112 was central to the court's analysis.

[19] General Statutes (Rev. to 1991) § 14-227b (h) provides in relevant part: ''The commissioner shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section, of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of . . . *six months if such person refused to submit to* [*a blood alcohol*] *test or analysis* . . . .'' (Emphasis added.)

CONNECTICUT LAW JOURNAL

State *v.* Schimanski

After the six month suspension period expired, the defendant was charged with and subsequently convicted of operating a motor vehicle while his license was under suspension, in violation of General Statutes (Rev. to 1991) § 14-215 (c). Id., 712. On appeal, the Appellate Court relied on its reasoning in *Jacobson* in concluding that General Statutes (Rev. to 1991) § 14-227b "is unambiguous in its provision that the refusal to submit to a blood alcohol test subjects a driver to the suspension of his license or operating privileges for a period of six months. *It does not require that the suspension continue beyond that six month period until such time that the driver's privileges are formally restored.* Therefore, upon completion of the six month period, a driver's license or operating privileges are no longer suspended on account of a violation of [General Statutes (Rev. to 1991)] § 14-227b and the driver may not be subjected to the enhanced penalties of [General Statutes (Rev. to 1991)] § 14-215 (c)." (Emphasis added.) Id., 714–15.

As we indicated, in the present case, the Appellate Court concluded that *Jacobson* and *Cook* were inapplicable because "[t]he [1989] revision of § 14-227a at issue in *Jacobson* specified a fixed one year license suspension without statutorily mandated conditions for restoration, and the 1991 revision of § 14-227b at issue in *Cook* contained a fixed six month license suspension, also without statutorily mandated conditions for restoration. Sections 14-227a and 14-227b were amended in 2014, effective in 2015, to shorten the mandatory license suspension period to forty-five days *and* to add the IID requirement in connection with restoration." (Emphasis in original.) *State* v. *Schimanski*, supra, 201 Conn. App. 177. Contrary to the Appellate Court's reasoning, the courts in *Jacobson* and *Cook* based their decisions on the fixed, unqualified language limiting the duration of the respective suspension periods in the relevant

State *v.* Schimanski

statutes. See *State* v. *Jacobson*, supra, 31 Conn. App.
803–804 ("Th[e] [statutory] scheme unambiguously
mandates a one year suspension of a violator's opera-
tor's license under [General Statutes (Rev. to 1989)]
§ 14-227a, and provides that a license shall be restored
upon proof of financial responsibility in another sec-
tion, [General Statutes (Rev. to 1989)] § 14-112. Nothing
in the statutory scheme, however, indefinitely extends
the period of suspension, pursuant to [General Statutes
(Rev. to 1989)] § 14-227a, past one year."); *State* v. *Cook*,
supra, 36 Conn. App. 714 ("[General Statutes (Rev. to
1991)] § 14-227b is unambiguous in its provision that
the refusal to submit to a blood alcohol test subjects
a driver to the suspension of his license or operating
privileges for a period of six months. It does not require
that the suspension continue beyond that six month
period . . . .").

In both *Jacobson* and *Cook*, the Appellate Court con-
cluded that, in the absence of express statutory lan-
guage to the contrary, requirements for license
restoration do not concurrently operate as precondi-
tions for terminating a license suspension period. See
*State* v. *Jacobson*, supra, 31 Conn. App. 804 ("If the
legislature chooses to amend [General Statutes (Rev.
to 1991)] § 14-215 (c) to extend the period of suspension
of a license beyond one year, and until the defendant
has complied with [a condition for restoration], it may
do so. Meanwhile, we are bound by the present language
of [the statute]."); see also *State* v. *Cook*, supra, 36 Conn.
App. 714 ("[General Statutes (Rev. to 1991) § 14-227b]
does not require that the suspension continue beyond
that six month period until such time that the driver's
privileges are formally restored"). Contrary to the
Appellate Court's reasoning in the present case, neither
of these rationales was rendered obsolete by the 2014
amendments to §§ 14-227a and 14-227b. Both statutes
still provided a fixed, unqualified license suspension

State *v.* Schimanski

period. See General Statutes (Rev. to 2017) § 14-227a (g) (''[a]ny person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation . . . have such person's motor vehicle operator's license or nonresident operating privilege suspended for forty-five days''); General Statutes (Rev. to 2017) § 14-227b (i) (1) (''[t]he commissioner shall suspend the operator's license or nonresident operating privilege . . . for a period of forty-five days''). Although the 2014 amendments added a new requirement—i.e., installation of an IID—that requirement expressly qualifies license restoration, not expiration of the license suspension period. See Public Acts 2014, No. 14-228, §§ 5 and 6. Accordingly, we conclude that *Jacobson* and *Cook* are fully applicable to and controlling of the issue of statutory interpretation presented in this case.

In reaching a contrary conclusion, the Appellate Court distinguished *Jacobson* on the ground that the IID requirement for restoration is incorporated *within* § 14-227b, whereas the proof of financial responsibility requirement for restoration in *Jacobson* was imposed by a separate statute. See *State* v. *Schimanski*, supra, 201 Conn. App. 177 (''The [1989] revision of § 14-227a at issue in *Jacobson* specified a fixed one year license suspension without statutorily mandated conditions for restoration, and the 1991 revision of § 14-227b at issue in *Cook* contained a fixed six month license suspension, also without statutorily mandated conditions for restoration. Sections 14-227a and 14-227b were amended in 2014, effective in 2015, to shorten the mandatory license suspension period to forty-five days *and* to add the IID requirement in connection with restoration.'' (Emphasis in original.)) However, the distinction drawn by the Appellate Court is irrelevant, as both the IID requirement and the proof of financial responsibility requirement are understood to operate as preconditions *for*

State *v.* Schimanski

*restoration*, which is the salient similarity for purposes of our analysis. Thus, regardless of where the legislature elected to incorporate the requirement within the statutory framework, the court in *Jacobson* confronted an identical issue to the one now before us—specifically, whether a statutory precondition for restoration extends an expressly defined suspension period.

In reaching its decision, the Appellate Court further reasoned that the defendant's interpretation of § 14-227b (i) (1) would "yield an absurd result" by "incentiviz[ing] an individual, whose license or operating privilege has been suspended pursuant to § 14-227b (i) (1), *not* to install an IID and complete the restoration process" because, then, they would only be subject to lesser penalties.[20] (Emphasis in original.) *State* v. *Schimanski*, supra, 201 Conn. App. 174–75. The Appellate Court's reasoning failed to take into account General Statutes (Rev. to 2017) § 14-227k (a), as amended by Public Acts 2017, No. 17-79, § 13, which provides that "[*n*]*o person whose right to operate a motor vehicle has been restricted* pursuant to an order of the court under subsection (b) of section 14-227j, by the Commissioner of Motor Vehicles or *by any provision of law that requires the use of an ignition interlock device*, *shall* (1) request or solicit another person to blow into an ignition interlock device or to start a motor vehicle equipped with an ignition interlock device for the purpose of providing such person with an operable motor vehicle, or (2) *operate any motor vehicle not equipped with a functioning ignition interlock device or any motor vehicle that a court has ordered such person not to operate.*"

--------

[20] Although the Appellate Court did not expressly state what lesser penalties it is referring to, one such penalty may be the aforementioned § 14-215b, which would have imposed a maximum penalty of a $25 late fee. See General Statutes § 14-41 (c) ("[a]ny previously licensed operator who fails to renew a motor vehicle operator's license in accordance with subsection (a) of this section shall be charged a late fee of twenty-five dollars upon renewal of such operator's license").

State *v.* Schimanski

(Emphasis added.) Contrary to the Appellate Court's reasoning, therefore, § 14-227k (a) not only penalizes the *exact* conduct the Appellate Court fears will be incentivized under the defendant's interpretation, but the statute imposes the same penalties for a violation of its provisions as § 14-215 (c) (1). See General Statutes (Rev. to 2017) § 14-227k (c) (2) ("[a]ny person who violates any provision of subdivision (2) of subsection (a) of this section shall be subject to the penalties set forth in subsection (c) of section 14-215"); General Statutes § 14-215 (c) (1) (providing that person who violates section "shall be fined not less than five hundred dollars or more than one thousand dollars and imprisoned not more than one year, and, in the absence of any mitigating circumstances as determined by the court, thirty consecutive days of the sentence imposed may not be suspended or reduced in any manner").

We disagree with the state that § 14-227k is applicable only after a person has restored his or her license. Section 14-227k does not distinguish between restored and unrestored status. Moreover, an individual may not lawfully operate a motor vehicle in the absence of a restored license; see General Statutes (Rev. to 2017) § 14-36 (a) ("no person shall operate a motor vehicle on any public highway of this state or private road on which a speed limit has been established in accordance with subsection (a) of section 14-218a until such person has obtained a motor vehicle operator's license"); and § 14-227b (i) (1) requires installation of an IID before an individual's license may be restored. Therefore, § 14-227b (i) (1) places a restriction on a person's right to operate a motor vehicle that requires the use of an IID for purposes of § 14-227k (a). Consequently, an individual who is subject to the provisions of § 14-227b (i) (1) and who operates a motor vehicle without an IID, prior to having his or her license restored, is in violation of § 14-227k (a).

State *v.* Schimanski

Finally, the state argues that the regulations adopted by the Commissioner of Motor Vehicles to implement the provisions of § 14-227b support the Appellate Court's interpretation of the statute. See General Statutes § 14-227b (o) ("[t]he Commissioner of Motor Vehicles shall adopt regulations, in accordance with chapter 54, to implement the provisions of this section"). Specifically, the state points to §§ 14-227b-12 and 14-227b-13 of the Regulations of Connecticut State Agencies.[21] Although the cited regulations support the Appellate Court's interpretation, they are entitled to no deference because, as we explained, the statute unambiguously limits the suspension period to forty-five days, and an agency's interpretation of a statute is entitled to deference only when the statute is *ambiguous* and has previously been subjected to judicial scrutiny, and when the agency's interpretation has been time tested. See, e.g., *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008).

In sum, the suspension of a motor vehicle operator's license pursuant to § 14-227b (i) (1) does not continue

[21] Section 14-227b-12 (b) of the Regulations of Connecticut State Agencies provides in relevant part that the "Connecticut operator's license or privilege" of a person who refuses a chemical test associated with an arrest for operating under the influence "shall be suspended automatically on the effective date for the period of time prescribed in subsection (i) of section 14-227b of the Connecticut General Statutes and *shall remain suspended thereafter until such person has installed an ignition interlock device in accordance with subsection (i) of section 14-227b* of the Connecticut General Statutes and sections 14-227a-11a through 14-227a-28a, inclusive, of the Regulations of Connecticut State Agencies. . . ." (Emphasis added.)

Section 14-227b-13 of the Regulations of Connecticut State Agencies provides that an operator who received a suspension notice, but failed to request a hearing on their suspension, shall receive an additional notice affirming their suspension that must state that "(1) as a condition of reinstatement of such person's Connecticut operator's license or privilege, such person shall install an ignition interlock device in each motor vehicle owned or operated by such person and maintain such device for the period of time required in subsection (i) of section 14-227b of the Connecticut General Statutes and specified in the suspension notice; and (2) *such person's operator's license or privilege shall remain suspended until such person has installed an ignition interlock device.*" (Emphasis added.)

State *v.* Schimanski

until the operator has installed an IID but, rather, is strictly limited to the forty-five days specified in the statute. Because the defendant's license suspension period expired on December 2, 2017, she was not operating a motor vehicle while her operator's license was under suspension on December 4, 2017.

The judgment of the Appellate Court is affirmed insofar as that court dismissed the defendant's appeal with respect to her motion to dismiss the second count of the state's first substitute information; the judgment of the Appellate Court is otherwise reversed, and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to render judgment dismissing the state's second substitute information.

In this opinion the other justices concurred.